FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 25, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ADILA B.,[1] | No.    4:20-cv-5171-EFS |
| Plaintiff, | |
| v. | **ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS AND DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2] | |
| Defendant. | |

Plaintiff Adila B. appeals the denial of benefits by the Administrative Law Judge (ALJ).  Because the ALJ wholly failed to address a claimed impairment specifically asserted by Plaintiff, as well as a diagnosis and other medical evidence that arguably supported Plaintiff's claims, the Court grants summary judgment in favor of Plaintiff, reverses the decision of the ALJ, and remands this case for further proceedings.

---

[1] To protect their privacy, the Court refers to social security plaintiffs by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] On July 9, 2021, Ms. Kijakazi became the Acting Commissioner of Social Security. She is therefore substituted for Andrew Saul as Defendant. Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3]  Step one assesses whether the claimant is engaged in substantial gainful activity.[4]  If the claimant is engaged in substantial gainful activity, benefits are denied.[5]  If not, the disability evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities.[7]  If the claimant does not, benefits are denied.[8]  If the claimant does, the disability evaluation proceeds to step three.[9]

Step three compares the claimant's impairment or combination of impairments to several recognized by the Commissioner as so severe as to preclude substantial gainful activity.[10]  If an impairment or combination of impairments

---

[3] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[4] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[5] *Id.* §§ 404.1520(b), 416.920(b).

[6] *Id.* §§ 404.1520(b), 416.920(b).

[7] *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[8] *Id.* §§ 404.1520(c), 416.920(c).

[9] *Id.* §§ 404.1520(c), 416.920(c).

[10] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11]  If not, the disability evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity ("RFC").[12]  If the claimant can perform past work, benefits are denied.[13]  If not, the disability evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied.  If not, benefits are granted.[15]

The claimant has the initial burden of establishing he is entitled to disability benefits under steps one through four.[16]  At step five, the burden shifts to the Commissioner to show the claimant is not entitled to benefits.[17]

---

[11] *Id.* §§ 404.1520(d), 416.920(d).

[12] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[13] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[14] *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497–98 (9th Cir. 1984).

[15] 20 C.F.R. §§ 404.1520(g), 416.920(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

## II.    Factual and Procedural Summary

In August 2017, Plaintiff filed a Title II application for a period of disability and disability insurance benefits.  In May 2018, Plaintiff also protectively filed a Title XVI application for supplemental security income.  In both applications, she listed the alleged onset date as March 25, 2016.[18]

### A.    Plaintiff's Accident History & Initial Alleged Impairments

The medical records on file show Plaintiff reported injuring her left shoulder in 2012 while working as a cashier by twisting a carrousel.[19]  She then reported injuring her left shoulder again, as well as her neck, in September 2015 while at work by lifting a heavy bag of dog food.[20]  In March 2016, Plaintiff reported another workplace accident in which she passed out, fell backwards, and injured her left shoulder, lower back, and upper back.[21]  In July 2016, she reported a fourth and final workplace accident, saying she was lifting an 18-can case of beer and injured her left shoulder, upper back, and lower back.[22]  In claiming disability, Plaintiff alleged low back pain, middle back pain, left shoulder pain, bilateral leg numbness, memory loss, headaches, insomnia, frequent nightmares, and depression.[23]

---

[18] AR 15, 196.

[19] *See, e.g.*, AR 392, 677.

[20] *See, e.g.*, AR 677–78.

[21] *See, e.g.*, AR 678.

[22] *See, e.g.*, AR 679.

[23] AR 79.

1

**B.    The Hearing & Plaintiff's Additional Alleged Impairment**

2        Plaintiff's claims were denied initially and upon reconsideration.[24]

3   Administrative Law Judge Stewart Stallings presided over the requested

4   administrative hearing by video.[25]  At the hearing, Plaintiff, through counsel,

5   asserted somatic symptom disorder as an additional or alternative basis for

6   disability and argued that she met the corresponding listing (12.07).[26]  Somatic

7   symptom disorder can be characterized by, among other things, physical

8   symptoms—including pain—that are not intentionally produced and otherwise

9   unexplainable.[27]  It can also be characterized by "a preoccupation with having or

10  acquiring a serious medical condition that has not been identified or diagnosed."[28]

11       1.   The ALJ's Five-Step Findings

12       In the written decision denying Plaintiff's disability claims, the ALJ found as

13  follows:

14       •   Insured Status—December 31, 2021, was Plaintiff's date last insured.[29]

15

16

17   _____

18  [24] AR 67–88.

19  [25] AR 15.

20  [26] AR 63.

21  [27] 20 C.F.R. § Pt. 404, Subpt. P, App. 1 ("Listing") 12.00B6.

22  [28] Listing at 12.00B6.

23  [29] AR 17.

- Step One—Plaintiff had not engaged in substantial gainful activity since March 25, 2016, the alleged onset date.[30]

- Step Two—Plaintiff had the following medically determinable severe impairments: lumbar degenerative disc disease, depressive disorder, and opioid dependence.[31]

- Step Three—Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.[32]

- RFC—Plaintiff had the RFC to perform light work with the following limitations:

  o Requires a sit/stand option allowing for changing positions every 30 minutes for about 5 minutes (at the claimant's discretion) while remaining at workstation.

  o Can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds.

  o Occasionally stoop, crouch, kneel, and crawl.

  o No exposure to moving/dangerous machinery or unprotected heights.

  o Requires a low-stress work environment, meaning no production pace, conveyer belt, or sales quota positions.

---

[30] AR 17.

[31] AR 18.

[32] AR 19.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

       ○ Predictable environment.

       ○ No complex instructions and must have instructions that are provided in direct fashion.[33]

- Step Four—Plaintiff was unable to perform any past relevant work.[34]

- Step Five—Considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such sub assembler (DOT #729.684-054), small products assembler (Dot #706.684-022), and production assembler (DOT #706.687-010).[35]

## 2. The ALJ's Medical-Opinion Persuasiveness Findings

In assessing various medical opinions of record, the ALJ made the following persuasiveness findings:

- Orthopedic surgeon Daniel Seltzer, MD, completed an independent medical evaluation (IME) of Plaintiff in December 2016 and concluded Plaintiff had no restrictions and could return to work in any capacity.[36] Dr. Seltzer noted that many of the medical records he reviewed suggested an overall lack of objective abnormalities and malingering; he also found

---

[33] AR 20–21.

[34] AR 24.

[35] AR 25.

[36] AR 676–701.

evidence of malingering while conducting his own examination.[37]  The ALJ found Dr. Seltzer's opinion to be "consistent with the available record, which intersperses extreme complaints with mild or benign objective findings and suggestions of malingering," as well as consistent "with his own examination and with the overall record."[38]

- Hector Gutierrez, PA-C, concurred with Dr. Seltzer's December 2016 findings and conclusions, "including that [Plaintiff]'s condition is medically fixed and stable with regard to the injury of March 25, 2016 and July 23, 2016.[39]  The ALJ found Mr. Gutierrez's opinion to have "similar persuasive effect" as that of Dr. Seltzer's.[40]

- Ronald Fleck, MD, likewise concurred with Dr. Seltzer's December 2016 findings and conclusions, "including that [Plaintiff]'s condition has reached maximum medical improvement with regard to the injury of

---

[37] Dr. Seltzer had also previously conducted an IME of Plaintiff in February 2016 and reached similar conclusions. AR 392–400.  At that time, Dr. Seltzer diagnoses included "[p]robable willful misrepresentation of symptoms" and "[p]ossible underlying psychological or psychiatric condition." AR 398.  Dr. Seltzer noted "marked functional overlay, marked symptom magnification and a probable willful misrepresentation of symptoms." AR 400.

[38] AR 23.

[39] AR 1225.

[40] AR 23.

March 25, 2016 and July 23, 2016.[41]  In doing so, Dr. Fleck added that he had himself "observed malingering and positive Waddell signs."  The ALJ found Dr. Fleck's opinion to have "similar persuasive effect" as that of Dr. Seltzer's.[42]

- Orthopedic surgeon Aleksander Curcin, MD, and neurologist Voderbet Kamath, MD, completed an IME of Plaintiff in July 2017.[43]  The ALJ noted that these doctors observed profound pain behavior inconsistent with the objective findings available, they found Plaintiff's gait testing unreliable, they were unable to identify a diagnosis other than a strained trapezius, and they determined Plaintiff had no physical restrictions.[44]  The ALJ found their assessment "consistent with the available record, which intersperses extreme complaints with mild or benign objective findings and suggestions of malingering.  It is consistent with their examination and with the overall record."

- Clinical psychologist Lynn Orr, PhD, completed a consultative examination of Plaintiff in October 2017.[45]  Dr. Orr determined that the psychological test results could not be relied upon as valid because of

---

[41] AR 1226.

[42] AR 23.

[43] AR 852–62.

[44] AR 23.

[45] AR 864–71.

Plaintiff's poor effort but nonetheless concluded that Plaintiff would have "significant difficulty carrying out tasks with any degree of consistency."[46]  The ALJ found Dr. Orr's opinion partially persuasive, saying, "Dr. Orr's own evaluation of the claimant suggested malingering was present and pervasive."[47]

- State agency medical consultants concluded in December 2017 and February 2018 that Plaintiff could perform a range of medium work.[48] The ALJ found these assessments "not significantly persuasive as inconsistent with the totality of the record."[49]

- State agency psychological consultants determined in December 2017 and February 2018 that there was insufficient evidence to evaluate Plaintiff's claims.[50]  The ALJ noted that the "overall completed record is consistent with some degree of mental impairment," and it supported "some related limitations despite the overall lack of consistent mental health treatment."  The ALJ therefore found the psychological consultants' assessments "not persuasive as inconsistent with the updated record."[51]

---

[46] AR 870.

[47] AR 22.

[48] AR 76–88.

[49] AR 23

[50] AR 76–88.

[51] AR 23.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 10

The ALJ concluded Plaintiff had not been under a disability, as defined in the Social Security Act ("the Act"), from March 25, 2017, through January 28, 2020.[52]  Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[53]  Plaintiff then timely appealed to this Court, primarily challenging the ALJ's analysis and findings regarding malingering and the lack thereof regarding Plaintiff's asserted somatic symptom disorder.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[54] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[55]  Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[56]  Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court

---

[52] AR 25–26.

[53] AR 1–3.

[54] 42 U.S.C. § 405(g).

[55] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[56] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[57]  The Court considers the entire record as a whole.[58]

Further, the Court may not reverse an ALJ decision due to a harmless error.[59]  An error is harmless "where it is inconsequential to the ultimate nondisability determination."[60]  The party appealing the ALJ's decision generally bears the burden of establishing harm.[61]

## IV.    Applicable Law & Analysis

Plaintiff alleges the ALJ erred by (1) failing to provide persuasiveness analyses for certain providers' medical opinions and assigning them improper weight, (2) failing at step two to include Plaintiff's asserted somatic symptom disorder as a severe condition, (3) improperly rejecting her symptom reports, and (4) failing at step five to include in the RFC certain claimed limitations related to her somatic symptom disorder.[62]  For the reasons discussed below, the Court finds

---

[57] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[58] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up).

[59] *Molina*, 674 F.3d at 1111.

[60] *Id.* at 1115 (cleaned up).

[61] *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

[62] *See, generally*, ECF No. 17.

the ALJ reversibly erred by failing to address medical opinions and other evidence supportive of an alleged impairment—somatic symptom disorder—specifically argued by Plaintiff.  Because this error potentially affected nearly every aspect of the ALJ's analysis, and because the Court is remanding this case for fresh analysis starting at step two, the Court need not resolve the remainder of Plaintiff's arguments.  Nonetheless, the Court addresses some of the issues raised to provide further clarity and guidance on remand.

**A.    Medical Opinions: Plaintiff establishes reversible error.**

When issuing a decision, an ALJ is required to articulate—on a source-level basis—how persuasive he found all the medical opinions of record.[63]  For purposes of the Act, the term "medical opinion" has a limited meaning.  A statement by a medical source qualifies as a medical opinion only if that statement is about what the claimant can still do despite her impairments and/or whether the claimant has one or more impairment-related limitations in the following abilities:

- performing physical demands of work activities;

- performing mental demands of work activities (such as understanding, remembering, carrying out instructions, maintaining concentration, persistence, or pace, and responding appropriately to supervision, co-workers, or work pressures in a work setting);

- performing sensory demands of work; and

---

[63] 20 C.F.R. §§ 404.1520c, 416.920c.

- adapting to environmental conditions.[64]

Here, Plaintiff asserts that the ALJ "failed to provide a persuasion analysis for some of [Plaintiff]'s important evaluating providers."[65]  Plaintiff does not identify with any level of specificity which providers or medical opinions should have been included in the ALJ's persuasiveness analysis.  Plaintiff does, however, broadly refer to "orthopedic reports regarding her limited ROM, loss of strength, and tearful, depressed affect."[66]  She also references notes authored by a Dr. Rashkoff.[67]

1. <u>Medical Opinions in Dr. Rashkoff's Report</u>

In June 2016, orthopedic surgeon Evan Rashkoff, MD, completed an IME of Plaintiff.[68]  Dr. Rashkoff's resulting report included the following notes, which can be fairly read to constitute medical opinions as statements about whether Plaintiff had one or more impairment-related limitations or restrictions in her ability to perform the physical demands of work activities:[69]

---

[64] 20 C.F.R. §§ 404.1513(a), 416.913(a).

[65] ECF No. 17 at 18.

[66] ECF No. 17 at 18.

[67] ECF No. 17 at 18.  *See also* 20 C.F.R. §§ 404.1513(a), 416.913(a) (each defining the term "medical opinion").

[68] AR 406.

[69] *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (each defining the term "medical opinion").

- "The claimant is unable to stand on her tiptoes. . . . She is unable to get up on heels either."

- "Range of spinal motion is markedly limited by guarding."

- "The claimant is unable to walk six feet in an attempt to sit up on the examination table."

- "It is very uncomfortable for the claimant to sit down."

- "The claimant has intrinsic hand function either based on pain or inability to abduct the fingers at the metacarpophalangeal joints.  There is also markedly diminished grip strength."

- "On the left side, the claimant had a great deal of difficulty moving her knee at all."[70]

2. <u>Other Probative Evidence in Dr. Rashkoff's Report</u>

Dr. Rashkoff's report also included noteworthy signs and other medical evidence.[71] Dr. Rashkoff stated that Plaintiff screamed and complained of pain several times during the physical examination, preventing completion of several aspects of the assessment.[72]  He went on to state that there were "no findings on

---

[70] AR 409–10.

[71] AR 409–10.  *See also* 20 C.F.R. §§ 404.1502(g), 416.902(*l*) (each defining "signs"); 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3) (each defining "other medical evidence").

[72] AR 409–10.

examination suggestive of any orthopedic or neurologic condition that needs to be worked up or treated."[73]

However, in the diagnosis portion of his report, Dr. Rashkoff stated, "The claimant sustained a cervical strain injury . . . on a more probable than not basis. Her complaints are out of proportion to the findings on exam *suggesting pain behavior and/or a hysterical conversion reaction*."[74]  Indeed, Dr. Rashkoff cited conversion several times in his report as the likely source of Plaintiff's symptoms, saying, "there does not appear to be an indication of secondary gain.  The claimant truly thinks that she is very ill and has serious musculoskeletal problems."[75] Dr. Rashkoff opined that "the claimant's current diagnosis is a cervical strain worsened by a hysterical conversion reaction."[76]  He then concluded that any work restrictions "should be determined by a psychotherapist or psychiatrist," and he recommended a psychotherapeutic evaluation.[77]

---

[73] AR 411.

[74] AR 410 (emphasis added).

[75] AR 412.

[76] AR 410–12.

[77] AR 412–13.

1

2

3

    3.  <u>Conversion Disorder & Somatic Symptom Disorder</u>

For purposes of the Act, conversion disorder falls under the umbrella of

"somatic symptom and related disorders":[78]

4

5

6

7

8

9

10

> These disorders are characterized by physical symptoms or
> deficits that are not intentionally produced or feigned, and that,
> following clinical investigation, cannot be fully explained by a
> general medical condition, another mental disorder, the direct
> effects of a substance, or a culturally sanctioned behavior or
> experience.  These disorders may also be characterized by a
> preoccupation with having or acquiring a serious medical
> condition that has not been identified or diagnosed.  Symptoms
> and signs may include, but are not limited to, pain and other
> abnormalities of sensation, gastrointestinal symptoms, fatigue,
> a high level of anxiety about personal health status, abnormal
> motor movement, pseudoseizures, and pseudoneurological
> symptoms, such as blindness or deafness.[79]

11

As set forth in listing 12.07, a claimant is to be considered disabled due to

12

somatic symptom and related disorders upon a showing of the following:

13

A. Medical documentation of one or more of the following:

14

---

15

[78] Somatic symptom disorder is sometimes referred to as "somatoform disorder" or

16

"somatization disorder."  *See* Somatoform disorders—Classification, 1 Medical

17

Information System for Lawyers § 5:39 (2d) ("A somatoform disorder is one where

18

there are physical complaints but no objective evidence for them and a suspicion

19

that they are of psychological origin.");  Somatic Symptom and Related Disorders,

20

Diagnostic & Statistical Manual of Mental Disorders, 5th ed. S2H9 ("The DSM-IV

21

term somatoform disorders was confusing and is replaced by somatic symptom and

22

related disorders.")

23

[79] Listing at 12.00B6.

1. Symptoms of altered voluntary motor or sensory function that are not better explained by another medical or mental disorder;
2. One or more somatic symptoms that are distressing, with excessive thoughts, feelings, or behaviors related to the symptoms; or
3. Preoccupation with having or acquiring a serious illness without significant symptoms present.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
1. Understand, remember, or apply information (see 12.00E1).
2. Interact with others.
3. Concentrate, persist, or maintain pace.
4. Adapt or manage oneself.[80]

### 4. The ALJ's Failure to Address Dr. Rashkoff's Report

Although there is ample contradictory evidence in the record, and Dr. Rashkoff himself noted that conversion disorder was outside his specialty as an orthopedic surgeon, Dr. Rashkoff's report nonetheless contains medical opinions and other highly probative evidence supportive of Plaintiff's somatic-symptom-disorder claim. The ALJ, however, failed to mention Dr. Rashkoff's medical opinions, the conversion disorder diagnosis, or any of Dr. Rashkoff's other notes. At no point in his decision did the ALJ even mention Dr. Rashkoff's report—though he did cite to it, suggesting that he did not overlook it entirely.[81]

---

[80] Listing at 12.07.

[81] *See* AR 18, 22 (citing to Dr. Rashkoff's report after noting, "Physical examination showed marked range of motion limitation due to guarding, tenderness to

The omission of a persuasiveness analysis by itself clearly constitutes legal error.[82]  The failure to address a relevant medical opinion can often be consequential to the ALJ's overall decision.[83]  So it is here—particularly for the reasons discussed further below.  The Court therefore finds that the ALJ's error warrants remand.

## B.    Steps Two to Five: Reconsideration is warranted.

Plaintiff asserts that the ALJ erred at step two by failing to identify her "somatic symptom disorder as a severe condition."[84]  The Court need not determine whether the ALJ erred in failing to include somatic symptom disorder at step two.  The Court does find, however, that the ALJ erred in failing to in any way address a potential impairment that was expressly raised by Plaintiff and supported by at least some objective medical evidence.[85]

---

palpation, and unsteadiness and exaggerated painful gait," and then citing it again after stating, "The claimant was suspected of exaggerating symptoms.").

[82] *See* 20 C.F.R. § 404.1520c (requiring a persuasiveness analysis for all sources of medical opinions).

[83] *See, e.g.*, *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (failure to address medical opinion was reversible error)

[84] ECF No. 17 at 6.

[85] *See* 20 C.F.R. §§ 404.1502(f), 416.902(k) (each defining "objective medical evidence").

1    1.  <u>Step Two — A De Minimus Screening Device</u>

2    Step two is a "de minimus screening device" meant to allow for swift disposal

3   of groundless claims.[86]  "Under the special technique used to evaluate mental

4   impairments, the ALJ "must first evaluate [the claimant's] pertinent symptoms,

5   signs, and laboratory findings to determine whether [the claimant has] a medically

6   determinable mental impairment(s)."[87]  "Psychiatric signs are medically

7   demonstrable phenomena that indicate specific psychological abnormalities, e.g.,

8   abnormalities of behavior, mood, thought, memory, orientation, development, or

9   perception, and must also be shown by observable facts that can be medically

10  described and evaluated."[88]  If signs or laboratory findings show that the claimant

11  has a medically determinable impairment that could reasonably be expected to

12  produce her symptoms, the ALJ must then evaluate the intensity and persistence

13  of the symptoms to determine how those symptoms limit the claimant's capacity for

14  work.[89]  Any medically determinable impairment that has "more than a minimal

15

16

17  _____

18  [86] *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

19  [87] 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). *See also* 20 C.F.R. §§ 404.1502(f),

20  416.902(k) (each providing that objective medical evidence "means signs,

21  laboratory findings, or both").

22  [88] 20 C.F.R. §§ 404.1502(g), 416.902(*l*).

23  [89] 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

1    effect on an individual's physical or mental ability(ies) to do basic work activities"

2    will be deemed sufficiently "severe" to pass step two of the disability analysis.[90]

3         Dr. Rashkoff's report arguably contained sufficient signs and other evidence

4    to "show that a medically determinable impairment(s) is present."[91]  And although

5    there is also substantial evidence to suggest that Plaintiff was in fact malingering,

6    much of the medical record could be rationally interpreted as consistent with the

7    diagnosed conversion disorder or another related disorder.  ALJs are free to reject

8    even diagnosed impairments for sufficient reasons.[92]  But the ALJ was not free to

9    silently disregard a potential impairment that was supported by at least some

10   objective medical evidence and which Plaintiff specifically asserted as a basis for

11   disability.

12        If an ALJ finds at least one severe medically determinable impairment at

13   step two, then the omission of another, additional impairment will generally be

14   considered harmless error based on the notion that the RFC assessment accounts

15   for all impairments and symptoms, even those not specifically found severe at step

---

17   [90] *See Smolen*, 80 F.3d at 1290 (quoting Social Security Ruling 85-28).

18   [91] *See* 20 C.F.R. §§ 404.1529(b), 416.929(b).

19   [92] *Cf.* 20 C.F.R. §§ 404.1525(d), 416.925(d) (each providing that "impairment(s)

20   cannot meet the criteria of a listing based only on a diagnosis"); *See also Nathan v.*

21   *Colvin*, 551 F. App'x 404, 407 (9th Cir. 2014) (not reported) ("The ALJ provided

22   specific and cogent reasons for rejecting [the claimant]'s diagnoses of PTSD and

23   dissociative amnesia [as medically determinable impairments].").

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 21

two.[93]  However, somatic symptom and other disorders can serve to give credence to alleged symptoms that would be otherwise rejected as unsubstantiated and/or as malingering; the very nature of this group of disorders means that if a genuine case is overlooked as a medically determinable impairment at step two, then the ALJ is unlikely to account for the corresponding symptoms at any of the later stages of the disability analysis.[94]  The ALJ here should have explained whether Plaintiff had a somatic symptom or related disorder (such as conversion) and, if so, whether such disorder was sufficiently severe for purposes of step two.  The ALJ is instructed to do so on remand.

### 2.  The ALJ's Findings Consistent with Somatic Symptom Disorder

At the hearing, Plaintiff's attorney specifically asserted (for the second time) that Plaintiff suffered from somatic symptom disorder and should be considered

---

[93] *See, e.g.*, *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

[94] *Cf. Lee v. Callahan*, 133 F.3d 927 n.7 (9th Cir. 1998) ("Unlike in Factitious Disorder or Malingering, the symptom production in Somatoform Disorders is not intentional, i.e., the person does not experience the sense of controlling the production of the symptoms."); *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) ("[T]here is always a risk that the patient is a malingerer.  And therefore the results of the tests administered to [the claimant] were not decisive on whether she really has a disabling somato-form disorder.").

disabled under listing 12.07.[95]  In response, the ALJ questioned whether there was a qualifying diagnosis, noted indications of malingering, and expressed doubt that the record would support finding Plaintiff met or equaled listing 12.07.[96]  Yet, at the same time, the ALJ also said, "I would agree that *she's got a somatoform issue . . . ."*[97]

The ALJ's written decision never mentions the "somatoform issue" referenced at the hearing.  Moreover, the ALJ's decision contains several statements seemingly consistent with—if not endorsing—somatic symptom and related disorders as they are set forth in listing 12.07.  In his decision, the ALJ found the overall record to be "consistent with some degree of mental impairment, with specific difficulty in carrying out tasks *due to preoccupation with her symptomology*," finding it "appropriate to assign some related limitations despite the overall lack of consistent mental health treatment."[98]  The ALJ stated that evidence received at the hearing level, "particularly *consistent complaints of pain and physical pain responses*," warranted limitations "aligning more with the

---

[95] AR 63.  Plaintiff's case was first called to hearing in July 2019, but when it was discovered that the translator knew Plaintiff, the hearing was continued to a later date.  During the initial hearing, counsel advised the ALJ that Plaintiff would be seeking disability under listing 12.07 for somatic symptom disorder. *See* AR 40.

[96] AR 63–64.

[97] AR 64 (emphasis added).

[98] AR 23.

claimant's allegations" than those which were articulated by state agency medical consultants.[99]  And, in assigning mental limitations, the ALJ said that "the claimant's *preoccupation with her physical injuries*, whether those injuries are as symptomatic as she claims or not, *is real and potentially limiting, particularly in her obsession with these symptoms*."[100]  Despite these findings, and even though the medical record overwhelmingly established that many of Plaintiff's claimed symptoms lacked any physical explanation, the ALJ failed to mention—let alone provide any analysis—regarding somatic symptom disorder or listing 12.07.

### 3.  The Requirement to Explain Inconsistencies

In determining a claimant's RFC, the ALJ is required to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."[101]  "In all cases in which symptoms, such as pain, are alleged, the RFC assessment must . . . [i]nclude a resolution of any inconsistencies in the evidence as a whole."[102]  This requirement is all the more crucial in the context of medical opinions.  "The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted."[103]

---

[99] AR 23.

[100] AR 23 (emphasis added).

[101] Social Security Ruling 96-8p, 1996 WL 374184.

[102] *Id.*

[103] *See id.*

The ALJ did not explain the inconsistencies between Dr. Rashkoff's findings and other evidence of record.  Nor did the ALJ explain why he did not adopt Dr. Rashkoff's medical opinions relating to Plaintiff's ability to perform the physical requirements of work.  The ALJ is instructed to do so on remand.

**C.    Plaintiff's Symptom Reports: Reconsideration is warranted.**

The ALJ provided in his decision an accurate summary of Plaintiff's symptom reports:

> She testified her severe shoulder and back pain forced her to reduce and ultimately cease work activity.  The claimant reported she enjoyed working prior to her injury.  She stated she now does not enjoy spending time with others.  She testified she is unable to sleep at night because her pain does not stop, and symptoms radiate to her extremities.  The claimant reported she spends most of her time in a lying position, and she is unable to cook for herself.  She reported her pain is so intense it has caused her inability to remember English and, at times, her native language.  The claimant's function report indicates limitations in most functional areas, including lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, climbing, seeing, remembering, completing tasks, concentrating, understanding, following instructions, using her hands, and getting along with others.[104]

The ALJ then found that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."[105]

---

[104] AR 21.

[105] AR 21.

1     Plaintiff argues that the ALJ failed "to make specific findings and rationality

2   for the rejection of [Plaintiff]'s testimony."[106]  The Court disagrees.  The ALJ

3   pointed out several inconsistencies between Plaintiff's symptom reports and

4   medical records.[107]  The ALJ also noted that diagnostic imaging results were

5   generally benign and that doctors consistently found the few abnormalities that

6   were found to be minimal.[108]  Most importantly, the ALJ outlined affirmative

7   evidence of malingering:

8          The effect of the abnormal findings of treatment visits and
           examinations is severely diminished by the evidence of
9          malingering and symptoms magnification throughout the record.
           There are multiple test results suggesting or confirming
10         malingering behavior.  Test results throughout the October 2017
           psychological evaluation were determined invalid based on "an
11         extremely high level of malingering."  The claimant was
           suspected of exaggerating symptoms.  The independent medical
12         examiner found evidence of multiple inconsistent findings and
           probably willful misrepresentation of symptoms.  Multiple
13         treatment providers agreed with the independent medical
           report, which included reports of malingering.  The prevalence
14         and consistency of reported malingering calls into question the
           veracity of most of the submitted evidence of claimant
15         complaints and allegations.[109]

16

17   _____

18   [106] ECF No. 17 at 15.

19   [107] AR 20

20   [108] AR 21.

21   [109] AR 22.  *See also* AR 19–20 (outlining several instances of examiners questioning

22   or outright declaring test results as invalid due to symptom exaggeration and

23   malingering).

Affirmative evidence of malingering is by itself sufficient to support a negative credibility finding.[110]  If such evidence is present in the record, the ALJ is relieved from the normal requirement of providing specific, clear, and convincing reasons for discounting a claimant's statements.[111]  Here, the ALJ articulated substantial evidence of malingering.  Yet because express consideration of Dr. Rashkoff's report and Plaintiff's somatic symptom disorder allegations could potentially affect the ALJ's assessment of Plaintiff's symptom reports and credibility, the ALJ is instructed on remand to explain what impact, if any, Plaintiff's claimed somatic symptom disorder has on the ALJ's symptom-report analysis.

**D.    Remand: The ALJ's errors were not harmless but serious doubt remains at to whether Plaintiff is disabled.**

The record contains evidence that Plaintiff was malingering and did not, in fact, suffer from somatic symptom disorder.  For instance, in July 2016, an ARNP noted, "All malingering tests grossly positive.  All the waddell signs grossly positive."[112]  The ARNP listed the strength for Plaintiff's right and left leg as "0–1 / 5" but included the following note: "patient walked into room on own

---

[110] *See Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).

[111] *Id.*; *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (the clear-and-convincing standard "does not apply is when there is affirmative evidence that the claimant is malingering").

[112] AR 545.

accord—malingering."[113]  Then, during a December 2016 IME, Dr. Seltzer noted that "the claimant had dramatically less range of motion in her cervical spine on direct examination as she had during observation in the history.  She is able to turn her neck and move about freely without any discomfort to discuss things with her husband and son."[114]  Similarly, Drs. Curcin and Kamath's July 2017 IME report states, "On casual observations, [Plaintiff] is noted to freely move her head in side-to-side without any manifestation of pain."[115]

After completing a psychological examination of Plaintiff in October 2017, Dr. Orr noted there were "significant questions regarding malingering" and stated, "She acted as though she were in pain throughout the interview.  There were times when she was focused that she did not portray a countenance of extreme turmoil from pain."[116]  Dr. Orr also noted that the memory test results indicated "an extremely high level of malingering."[117]  A reviewing state agency psychologist agreed that Plaintiff "scored well into the malingering range on all objective measures," and the psychologist opined that Plaintiff's symptom presentation "was of an invalid who may be seeking pain meds."[118]

---

[113] AR 546.

[114] AR 689.

[115] AR 860.

[116] AR 866.

[117] AR 869.

[118] AR 84.

At first blush, such evidence would seemingly support a finding of malingering over Plaintiff's claimed somatic symptom disorder, but there is nonetheless substantial evidence in the record cutting both ways. Especially given that one could rationally interpret the overall record as indicating either malingering or somatic symptom disorder, it was incumbent on the ALJ to resolve the inconsistencies.[119]

The Court cannot uphold a finding that was never made; nor can the Court infer a finding based on reasons that were never provided.[120] Because of the ALJ's silence on the issue of somatic symptom disorder, and especially if full credit is given to the statements in Dr. Rashkoff's June 2016 report, the Court cannot "confidently conclude" that no reasonable ALJ could have found Plaintiff disabled.[121] Thus, the ALJ's errors were not harmless.

Plaintiff requests an immediate award of benefits. Because of the evidence of malingering already discussed, the Court finds that "the record as a whole

---

[119] *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992) ("The ALJ is charged with determining credibility of medical testimony and resolving ambiguities in the evidence."); *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) (each requiring the ALJ to "consider whether there are any inconsistencies in the evidence").

[120] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) ("[Courts] review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

[121] *See Marsh*, 792 F.3d at 1173.

1
2

creates serious doubt as to whether [Plaintiff] is, in fact, disabled within the meaning of the Social Security Act."[122]  An immediate award is not appropriate.

### V.    Conclusion

3
4
5
6
7
8

The ALJ's decision was based at least in part on legal error.  The Court reverses the decision of the ALJ and remands this case for further proceedings and a redetermination beginning at step two of the disability analysis.   As part of the redetermination, the ALJ is instructed to, at a minimum, provide detailed and supported explanations regarding the following:

9
10
11
12
13
14

- The persuasiveness of Dr. Rashkoff's medical opinions and what effect, if any, the conversion disorder diagnosis and the other relevant statements in Dr. Rashkoff's June 2016 report have on the disability analysis.  In doing so, the ALJ should expressly note any important inconsistencies between Dr. Rashkoff's findings and the other evidence of record, as well as how Dr. Rashkoff's report was considered in assessing Plaintiff's RFC.

15
16

- Whether Plaintiff has a medically determinable impairment of somatic symptom disorder or a related disorder and, if so, its severity.

17
18
19

- How Dr. Rashkoff's June 2016 report and Plaintiff's assertions of somatic symptom disorder affect the ALJ's assessment of Plaintiff's symptom reports and credibility.

20

//

21

/

22

23

---

[122] *Garrison*, 759 F.3d at 1021.

Accordingly, **IT IS HEREBY ORDERED**:

1.      The case caption is to be **AMENDED** consistent with footnote 2.

2.      The decision of the ALJ is **REVERSED** and this matter is **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings as set forth above.

3.      Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

4.      The Commissioner's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

5.      The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff.

6.      The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and provide copies to all counsel.

**DATED** this 25th day of February 2022.

_____s/Edward F. Shea_____
EDWARD F. SHEA
Senior United States District Judge

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 31